IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) CR. NO. 2:12cr87-WKW |
| | ) (WO) |
| WILLIAM JAMES REESE | ) |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I. INTRODUCTION**

On October 12, 2012, defendant Willie James Reese ("Reese) filed a motion to suppress all evidence seized during an allegedly unconstitutional seizure and subsequent search of his 2000 Dodge Dakota pick-up truck.[1]  (Doc. # 290).  Claiming that the initial seizure of the vehicle was unconstitutional, Reese contends that all evidence secured as the result of that seizure should be suppressed.[2]  The United States responds that the officers had probable cause to seize the vehicle, and exigent circumstances warranted seizing the vehicle without a warrant.  The court held an evidentiary hearing on the motion on November 15, 2012.  Based on the evidence presented to the court and argument of the parties, the court concludes that the motion to suppress is due to be DENIED.

**II. FACTS**

In February 2012, co-defendants Delmond Bledson ("Bledson") and Willie Jerome Davis ("Davis") were identified as targets of a drug trafficking conspiracy.  Utilizing Title

---

[1] Reese's truck was seized on May 10, 2012.  An inventory search was conducted on May 11, 2012, and a hidden compartment was discovered during a search on May 16, 2012.

[2] At the evidentiary hearing, Reese conceded that if the seizure of the pick up truck was permissible under the 4th Amendment, then the subsequent search was also permissible.

III intercepts, the government identified defendant Reese as a "runner" for Davis. According to law enforcement officers, Reese was directed by Davis to transport illegal drugs and money.

Reese lives at 545 McRae Road, Deatsville, Alabama, which is approximately 2 miles from Davis. On April 26, 2012 and April 27, 2012, law enforcement officers intercepted telephone conversations between Reese and Davis that led the officers to believe that Davis was preparing to travel to Atlanta, Georgia to purchase cocaine. Based on a series of telephone calls on April 27, 2012, law enforcement began to focus on Reese's silver Dodge Dakota pick up truck because that truck "seemed important" to Reese and Davis.

Surveillance on Davis' house noted the arrival of the Dodge Dakota at the house at 10:16 p.m. on April 27, 2012. The Dodge Dakota left Davis' house at 10:44 p.m., and traveled back to Reese's residence on McRae Road.

At 12:38 a.m. on April 28, 2012, Officer Thomas Reed ("Reed") drove by Reese's residence and observed the Dodge Dakota parked in the driveway. When Reed drove by the house again at 5:05 a.m., the Dodge Dakota was no longer there. At approximately 8:00 a.m., law enforcement officers intercepted a telephone call between Reese and Davis. Based on this intercepted telephone call, Officer Reed believed that Davis had picked up several kilos of cocaine in Atlanta, and was delivering the drugs to Davis at 1984 Ingram Road, Deatsville, Alabama.

At approximately 8:29 a.m. on April 28, 2012, surveillance cameras captured Reese arriving at Davis' residence. At one point, Reese backed the truck under the carport and

climbed into the bed of the truck.  Although the officers could not see what Reese and Davis were doing, the officers believed that there was a hidden compartment in the truck that Reese used to transport cocaine.  Based on his knowledge and experience, Officer Reed believed that Reese and Davis were unloading cocaine that was hidden in the Dodge Dakota.

On May 10, 2012, law enforcement officers executed nine (9) search warrants and twelve (12) federal arrest warrants for various suspected members of the drug conspiracy including Bledson, Davis, and Reese.  Reese was arrested very early on the morning of May 10, 2012.  According to Officer Reed, Reese was arrested between 6:00 a.m. and 6:30 a.m.  Although the truck was at the residence at the time of Reese's arrest, the officers did not seize the Dodge Dakota at that time.

Later that day, law enforcement officers realized that they did not have the Dodge Dakota.  They also did not have a search warrant or a seizure warrant for the truck.  Between 6:00 p.m. and 7:00 p.m., officers went to Reese's residence at 545 McRae Road.  The truck was still in the driveway under the carport.  Officer Reed asked Reese's wife if she had the keys to the truck and if she would consent to the seizure of the truck.  Mrs. Reese asked Officer Reed if they had a warrant for the truck.  When told that they did not, she declined to consent to the seizure of the truck.

Officer Reed informed Mrs. Reese that they would return for the truck.[3]  The officers left the residence and called the case agent.  After talking with the case agent, the officers

---

[3] According to Mrs. Reese, when she asked for a warrant, the officers told her that they did not have a warrant.  The officers then said "they were going to get one.  Do not let anything happen to this vehicle while we're gone or you're going be in big trouble." (Evid. Hr'g Tr. at 43)

made the decision to return to the residence and seize the vehicle.[4]  They were gone for approximately an hour.  The officers did not attempt to secure a seizure warrant for the truck.

Officer Reed took possession of the truck at 8:15 p.m., approximately 14 hours after Reese's arrest.  Reed had the truck towed to the D.E.A. office in Montgomery and secured the truck in the D.E.A. parking lot.  According to Reed, "[t]hey took a quick look inside the truck [to] make sure there was (sic) no valuables in the open that could be seen." (Evid. Hr'g Tr. at 26).  The next day, on May 11, 2012, the agents conducted an inventory search of the truck.  On May 16, 2012, the agents discovered a hidden compartment in the truck.

Although the agents secured nine (9) search warrants and twelve (12) arrest warrants, at no time did the agents attempt to secure a seizure or search warrant for the truck.  Officer Reed conceded that there was sufficient time to secure a warrant.

> At the end of the day, . . . when we realized we did not have the truck – It is a truck.  I mean, it can be moved.  It can be taken somewhere else.  Once we went back there and realized that's where the truck was, we discussed what we were going to do and went back and took the truck.  We didn't think about the truck at six o'clock that morning and wait fourteen hours before we decided to go back to the house and look for the truck.  That was thought of and decided at six or seven that evening.

(Evid. Hr'g Tr. at 38).

### III. DISCUSSION

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," U.S.

---

[4] When they returned to the residence, Mrs. Reese again asked about a warrant.  According to Mrs. Reese, the officers simply said "we're taking it," and began to back in the tow truck.

CONST. AMEND. IV,[5] and its protections extend to automobiles. *See United States v. Jones*, — U.S. —, —, 132 S.Ct. 945, 949 (2012). The Amendment's primary purpose is to protect citizens from unwarranted governmental intrusion and to prevent abusive police power. *See Johnson v. United States*, 333 U.S. 10, 13 (1948); *United States v. Mendenhall*, 446 U.S. 544, 553-54 (1980) (plurality opinion). The Supreme Court has held that searches and seizures conducted absent a search warrant granted by a judicial officer are per se unreasonable under the Fourth Amendment, unless they fall within a limited set of well-defined exceptions. *Katz v. United States*, 389 U.S. 347, 357 (1967).

In his motion to suppress, Davis argues that because the truck "was not located on the public way, but was instead parked" in his driveway, the agents were required to obtain a warrant before seizing the vehicle. (Doc. # 290, Def's Mot. to Suppress at 2). In opposition to the defendant's motion to suppress, the government argues that probable cause and the mobility of the truck warranted seizing the Dodge Dakota. The court concludes that the seizure of the Dodge Dakota falls within the automobile exception to the Fourth Amendment's warrant requirement.

> The Fourth Amendment generally requires police to secure a warrant before conducting a search. *California v. Carney*, 471 U.S. 386, 390-391, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985). As we recognized nearly 75 years ago in *Carroll v. United States*, 267 U.S. 132, 153, 45 S.Ct. 280, 69 L.Ed. 543 (1925), there is an exception to this requirement for searches of vehicles. And under our established precedent, the "automobile exception" has no separate exigency requirement. We made this clear in *United States v. Ross*, 456 U.S. 798, 809,

---

[5] Specifically, the Fourth Amendment provides that "[]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

> 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), when we said that in cases where there was probable cause to search a vehicle "a search is not unreasonable if based on facts that would justify the issuance of a warrant, *even though a warrant has not been actually obtained*." (Emphasis added.) In a case with virtually identical facts to this one (even down to the bag of cocaine in the trunk of the car), *Pennsylvania v. Labron*, 518 U.S. 938, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996) (*per curiam*), we repeated that the automobile exception does not have a separate exigency requirement: "If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment ... permits police to search the vehicle without more." *Id*., at 940, 116 S.Ct. 2485.

*Maryland v. Dyson,* 527 U.S. 465, 466-467 (1999). *See also Chambers v. Maroney*, 399 U.S. 42, 48-49 (1970); *Texas v. White*, 423 U.S. 67 (1975)

The law is well-established that "the automobile exception to the Fourth Amendment's warrant requirement [is] based on the automobile's "ready mobility," an exigency sufficient to excuse failure to obtain a search warrant once probable cause to conduct the search is clear. *Labron*, 518 U.S. at 940. *See also United States v. Brown*, 2012 WL 5907378 (11th Cir. Nov. 21, 2012) (No. 11-15590); *United States v. Lewis*, 2012 WL 4497563, *1 (11th Cir., Oct. 1, 2012) (No. 11-14853) *United States v. Castellanos*, 428 Fed. Appx. 949, 957-958 (11th Cir. 2011); *United States v. Lindsey*, 482 F.3d 1285, 1293 (11th Cir. 2007); *United States v. Tamari,* 454 F.3d 1259, 1264 (11th Cir. 2006); *United States v. Nixon,* 918 F.2d 895, 903 (11th Cir. 1990). The automobile exception does not require a separate and distinct finding of exigency. *United States v. Jolly*, 368 Fed. Appx. 17, 19 (11th Cir. 2010). Reese does not dispute, and the facts demonstrate, that the Dodge Dakota was operational and thus, satisfies the mobility requirement.[6]  *See Alexander*, 835 F.2d at 1409 ("the ability

---

[6] The fact that the vehicle was parked and Mrs. Reese did not have the keys is immaterial. *See* (continued...)

to become mobile is sufficient"); *United States v. Brazel*, 102 F.3d 1120, 1147 (11th Cir. 1997) ("inherent potential for mobility" sufficient to justify warrantless search). Consequently, the determinative issue for the court is whether there was probable cause to seize the truck on May 10, 2012.

"Probable cause exists when under the totality-of-the-circumstances . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Franklin*, 694 F.3d 1, 7 (11th Cir. 2012). *See also Tamari*, 454 F.3d at 1261-61; *Tobin*, 923 F.2d at 1510. "In determining when reasonable cause exists to believe that a vehicle contains contraband, the Court examines "the totality of the circumstances and the inferences that flow therefrom." *United States v. Alexander*, 835 F.2d 1406, 1409 (11th Cir. 1988).

The totality of the evidence before the court demonstrates that probable cause existed to believe that contraband or evidence of a crime would be found in the Dodge Dakota. Two weeks before the Dodge Dakota was seized, relying on Title III intercepts and surveillance, Davis traveled to Atlanta, Georgia in the truck to purchase cocaine. Based on surveillance and intercepted telephone calls, officers believed that Davis purchased several kilos of cocaine in Atlanta, and delivered the drugs to Davis at 1984 Ingram Road, Deatsville,

---

[6](...continued)
*United States v. Brazel*, 102 F.3d 1120, 1147 (11th Cir. 1997). In *Brazel*, the defendant was in custody and the officers obtained a second set of keys from the defendant's girlfriend. The court held that the ability of the vehicle to become mobile was sufficient to justify the warrantless seizure and search. *Id*. *See also United States v. Birdsong*, 982 F.2d 481 (11th Cir. 1983) (officers may seize vehicle under automobile exception if there is probable cause, even if the defendant was in custody and officers had keys to vehicle)

Alabama, using the truck to transport the drugs.

Surveillance cameras captured Reese at Davis' residence. Based on actions taken by Reese and Davis, the officers observed behavior that indicated that there was a hidden compartment in the truck that was used to transport cocaine. Based on his knowledge and experience, Officer Reed believed that Reese and Davis unloaded cocaine that was hidden in the Dodge Dakota. Clearly, the officers had probable cause to believe that the truck had been used to transport drugs.

On May 10, 2012, law enforcement officers arrested Reese at his home. At that time, the officers did not seize the truck simultaneously with Reese's arrest. In fact, the officers waited over fourteen hours to seize the truck. Nonetheless, the fourteen hour delay does not undermine probable cause in this case. Officer Reed testified that law enforcement officers had been investigating a large scale drug conspiracy since February, 2012. Intercepted telephone calls identified Reese as part of the conspiracy. Reese worked for co-defendant Davis within the drug trafficking organization as a runner who transported drugs and money. In addition, Reese and Davis were observed engaged in activity that was suggestive of unloading drugs. Reese' actions on April 27 and 28, 2012, coupled with the intercepted telephone calls and surveillance, are sufficient to establish probable cause to believe that the Dodge Dakota contained contraband or evidence of a crime. "Probable cause does not require certainty; rather, it is a doctrine of "reasonable probability."" *Castellanos*, 428 Fed. Appx. at 958 quoting *United States v. Magluta*, 44 F.3d 1530, 1535 (11th Cir. 1995).

The fact that officers waited two weeks before arresting Reese and seizing the Dodge Dakota does not destroy probable cause. *See United States v. Ashcroft*, 607 F.2d 1167, 1171 (5th Cir. 1979).[7]  Based on the totality of the circumstances, a reasonable officer "could deduce with fair probability that the [truck] contained contraband or evidence of a crime." *See Tamari*, 454 F.3d at 1264.  Consequently, the seizure was permissible under automobile exception to the warrant requirement.[8]

## CONCLUSION

For the reasons as stated, the court finds that the defendant's rights secured by the Fourth Amendment were not violated when law enforcement officers seized the Dodge Dakota without a warrant on May 10, 2012.  Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the defendant's motion to suppress be DENIED.  It is further

ORDERED that the parties shall file any objections to the said Recommendation on

---

[7] *See Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

[8] Because the court concludes that the seizure of the Dodge Dakota was permissible under the automobile exception to the warrant requirement, the court pretermits discussion of whether Reese had a reasonable expectation of privacy in the truck because it was parked in a carport and not a self-contained garage.  Even if the court were to consider Reese's argument that he had an expectation of privacy in the vehicle because it was parked under the carport attached to his residence, the motion to suppress would still be due to be denied.  In *California v. Carney*, the Supreme Court concluded that the expectation of privacy attached to an automobile is "significantly less than that relating to one's home or office." 471 U.S. 386, 391 (1985).  *See also Capraro v. Bunt*, 44 F.3d 690, 691 (8th Cir. 1995) ("reduced privacy expectation accorded motor vehicles").  Furthermore, the carport was open and visible from the street which affords it less privacy than a house.  *See Coffin v. Brandau*, 642 F.3d 999, 1012 (11th Cir., 2011) (distinguishing between an attached garage with a door and a carport).  Consequently, the automobile exception to the warrant requirement would still be applicable notwithstanding the fact that the Dodge Dakota was parked at Reese's residence in the carport.

or before **January 2, 2013.** Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 18th day of December, 2012.

        /s/Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE